**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| MARILYN HERNANDEZ, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 23-cv-00519-LKG |
| v. | ) ) | Dated: July 25, 2024 |
| BLOOMINGDALE'S INC., *et. al.*, | ) ) ) | |
| Defendants. | ) ) | |

## **MEMORANDUM OPINION**

### I.   INTRODUCTION

In this putative class action, Plaintiff, Marilyn Hernandez, bring claims, individually and on behalf of other similarly situated individuals, against Defendants, Bloomingdale's, LLC and Bloomingdales.com, LLC, for violations of the Maryland Wiretapping and Electronic Surveillance Act ("MWESA"), Md. Code Ann., Cts. & Jud. Proc. § 10-401, *et seq*., and intrusion upon seclusion, for alleged surreptitious use of JavaScript computer code known as "Session Replay Code" on the Bloomingdales.com website.  *See generally* ECF No. 17.  Defendants have moved to dismiss this mater pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).  ECF No. 27.  The motion is fully briefed.  ECF Nos. 27-30.  No hearing is necessary to resolve the motion.  *See* L.R. 105.6 (D. Md. 2023).  For the reasons that follow, the Court: (1) **GRANTS-in-PART** the Defendants' motion to dismiss and (2) **DISMISSES** the amended complaint.

### II.   FACTUAL AND PROCEDURAL BACKGROUND[1]

#### A.   Factual Background

In this putative class action, Plaintiff Marilyn Hernandez bring claims against Defendants for violations of the MWESA and intrusion upon seclusion, for alleged surreptitious use of JavaScript computer code known as "Session Replay Code" on the Bloomingdales.com website.

---

[1] The facts recited in this memorandum opinion are taken from the amended complaint and Defendants' motion to dismiss.  ECF Nos. 17 and 27.

1

*See generally* ECF No. 17.  Specifically, Plaintiff alleges that the Defendants are wiretapping the electronic communications of visitors to the Bloomingdales.com website and procuring third-party vendors to embed snippets of Session Replay Code on that website, which then deploys on each website visitor's internet browser for the purpose intercepting and recording the website visitor's electronic communications with Bloomingdales.com.  *Id*. at ¶¶ 1 and 2.

Plaintiff asserts the following claims in the amended complaint: (1) violation of the MWESA (Count I) and (2) invasion of privacy-intrusion upon seclusion (Count II).  *Id*. at ¶¶ 87-128.  As relief, Plaintiff seeks certain declaratory and injunctive relief and to recover monetary damages, attorney's fees and costs from the Defendants.  *Id*. at Prayer for Relief.

The Parties

Plaintiff Marilyn Hernandez was a citizen of the State of Maryland at all times relevant to this dispute.  *Id.* at ¶ 10.

Defendant Bloomingdale's, LLC is a limited liability company organized under the laws of Ohio, with its principal place of business located in Long Island City, New York.  *Id.* at ¶ 11.

Defendant Bloomingdales.com, LLC, is a limited liability company formed under the laws of Ohio, with its principal place of business located in Long Island City, New York.  *Id.* at ¶ 12.

The Bloomingdales.com Website

As background, the Bloomingdales.com website offers prospective customers the opportunity to browse Bloomingdale's products, place online orders for delivery, book in-store appointments with company representatives and to view whether a desired product is available for in-store purchase.  *Id.* at ¶ 17.  Bloomingdale's also operates a brick-and-mortar store located in Chevy Chase, Maryland, which offers, among other things, men's and women's apparel, accessories and shoes for purchase.  *Id.* at ¶ 54.

The desktop and mobile versions of the Bloomingdales.com website allow users to search for nearby stores in Maryland and provide directions to those stores based on the user's location.  *Id.* at ¶ 19.  The Bloomingdales.com website also allows visitors to book appointments with sales representatives at the Bloomingdale's brick-and-mortar store in Maryland.  *Id.*  In addition, the

website allows visitors to check whether a product is in stock at the Chevy Chase, Maryland brick-and-mortar store and to order products for in store pickup. *Id.*

### The Plaintiff's Use Of The Bloomingdales.com Website

Plaintiff alleges in this action that she visited the Bloomingdales.com website on her computer on several occasions while physically located in Maryland. *Id.* at ¶ 61. Plaintiff also alleges that she viewed Bloomingdale's merchandise sold both online and in retail stores during these virtual visits. *Id.*

In addition, Plaintiff alleges that her website communications were captured by Session Replay Code, and sent to various Session Replay providers, during her visits to the Bloomingdales.com website. *Id.* at ¶ 64. In this regard, Plaintiff alleges that the Session Replay Code is used by Defendants to collect information about visitors' mouse movements, clicks, scrolls, zooms, URLs of webpages visited, and other forms of a visitor's navigation and interaction with the website without the consent or knowledge of the visitors. *Id.* at ¶ 93. Plaintiff also alleges that the interception of her personal information began immediately upon accessing the Bloomingdales.com website. *Id.* at ¶ 73.

Lastly, Plaintiff maintains that she was not made aware of, and did not provide meaningful consent to, the capturing of her website communications. *Id.* at ¶¶ 63, 73 and 77. And so, Plaintiff maintains that her experience on the Bloomingdales.com website resulted in the loss of control over her personal information and that the actions taken by Defendants violate the MWESA and constitute a common law intrusion upon seclusion.[2] *Id.* at ¶¶ 27-34 and 104.

---

[2] The Maryland Wiretapping and Electronic Surveillance Act makes it unlawful for any person to: (1) "willfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;" (2) "[w]illfully disclose, or endeavor to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subtitle;" or (3) "[w]illfully use, or endeavor to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subtitle." Md. Code Ann., Cts. & Jud. Proc. § 10-401. A person who violates the Act is guilty of a felony and is subject to imprisonment for not more than 5 years or a fine of not more than $10,000, or both. *Id.*

### B. Relevant Procedural Background

Plaintiff commenced this putative class action on February 24, 2023. ECF No. 1. On November 6, 2023, Plaintiff filed an amended complaint. ECF No. 17.

On March 11, 2024, Defendants filed a motion to dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). ECF No. 27. On April 1, 2024, Plaintiff filed a response in opposition to Defendants' motion to dismiss. ECF No. 28. On April 15, 2024, Defendants filed a reply brief. ECF No. 29.

The Defendants' motion to dismiss having been fully briefed, the Court resolves the pending motion.

## III. LEGAL STANDARDS

### A. Rule 12(b)(2) And Personal Jurisdiction

A motion to dismiss for lack of personal jurisdiction brought pursuant to Fed. R. Civ. P. 12(b)(2) "raises an issue for the [C]ourt to resolve, generally as a preliminary matter." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). The burden is "on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). To do so, a plaintiff need only make "a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Grayson*, 816 F.3d at 268.

When deciding a motion brought pursuant to Fed. R. Civ. P. 12(b)(2), the Court may "rule solely on the basis of motion papers, supporting legal memoranda, affidavits, and the allegations in the complaint." *State v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 437 (D. Md. 2019) (citations omitted). And so, the Court must consider all disputed facts and make reasonable inferences in favor of the plaintiff in determining whether the plaintiff has made the requisite showing that the Court possesses personal jurisdiction over a defendant. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

In this regard, the Fourth Circuit has held that a federal court sitting in diversity "has personal jurisdiction over a non-resident defendant if: (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 188 (4th Cir. 2016) (citation omitted).

4

"The reach of Maryland's long-arm statute is coextensive with the reach of the Due Process Clause of the United States Constitution, so the 'statutory inquiry merges with the constitutional examination.'" *Id*. (citation omitted).  Courts may exercise general personal jurisdiction and specific personal jurisdiction.  *Id.*  "For a court to have specific personal jurisdiction over a defendant, the defendant must have 'purposefully established minimum contacts in the forum State' such 'that [it] should reasonably anticipate being haled into court there.'" *Id.* at 189.  And so, the amended complaint must allege facts to show that: (1) the defendant "purposefully availed itself of the privilege of conducting activities in the State;" (2) that the plaintiff's "claims arise out of those activities directed at the State;" and (3) that "the exercise of personal jurisdiction would be constitutionally reasonable." *Id*. (citation omitted).[3]

      Relevant to this dispute, several courts have considered whether the operation of a website is an activity that is purposefully directed at the residents of a forum state, so that the Court may exercise personal jurisdiction over the website operator.  Notably, in *Fidrych*, the Fourth Circuit considered whether a plaintiff could establish general or specific personal jurisdiction over Marriott International in the State of South Carolina, so that he could pursue personal injury claims arising from an injury that he sustained at a Marriott International-affiliate hotel.  *Fidrych v. Marriott Int'l., Inc.*, 952 F.3d 124 (4th Cir. 2020).  The Fourth Circuit determined that Marriott International's operation of a national website that is accessible in South Carolina did not amount to an activity that could establish specific personal jurisdiction, because plaintiff's personal injury claims did not arise out of, or relate to, Marriott International's contacts in South Carolina.  *Id.* at 139.  The Fourth Circuit also determined that the operation of a website that is accessible in South Carolina is not sufficient to show that Marriott International purposefully directed its activities in that state, because: (1) none of the wrongs alleged in the case took place in South Carolina; (2) Marriott International's qualification to do business, and involvement with hotels, in the South Carolina had nothing to do with the

---

[3] General jurisdiction may be exercised when the defendant has contacts with the forum jurisdiction that are "so constant and pervasive as to render it essentially at home in the forum State." *Fidrych v. Marriott Int'l., Inc.*, 952 F.3d 124, 132-33 (4th Cir. 2020) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)).  And so, a corporation may be fairly regarded as at home in the forum where it is incorporated and the forum where it has its principal place of business.  *Id.*

claims asserted in the case; (3) Marriott International's website does not target South Carolina residents for commercial transactions any more than it targets any other state; and (4) the level of interactivity on Marriott International's website was not enough to make the website a sufficient basis to support the exercise of specific personal jurisdiction. *Id*. at 140-143.  And so, the Fourth Circuit concluded that Marriott International's case-related contacts with South Carolina were too tenuous and insubstantial to permit the exercise of specific personal jurisdiction. *Id*. at 143-144.

The United States Court of Appeals for the First Circuit has also recently addressed the jurisdictional issue presented in this case—whether the operation of the Bloomingdales.com website in a forum state is an activity that supports the exercise of specific personal jurisdiction over the website operator.  In that case, the First Circuit determined that Bloomingdale's commissioning of Session Replay Code to deploy on its website was not a sufficient linkage with the State of Massachusetts to support the exercise specific jurisdiction. *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90 (1st Cir. 2024).

## IV.   LEGAL ANALYSIS

The Defendants have moved to dismiss this matter upon several grounds.  First, Defendants argue that the Court should dismiss the amended complaint for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), because: (1) Plaintiff impermissibly groups the Defendants together for jurisdictional purposes; (2) Plaintiff fails to plead facts to show purposeful availment; and (3) Plaintiff's claims do not arise out of, or relate to, any Maryland contacts by Defendants.  ECF No. 27-1 at 3-12.  Second, Defendants argue that the Court should also dismiss the amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6), because Plaintiff impermissibly groups the Defendants and because Plaintiff fails to state plausible MWESA and intrusion upon seclusion claims in the amended complaint. *Id*. at 13-20.  Lastly, Defendants argue that Plaintiff lacks standing to seek the injunctive relief that she requests in this matter. *Id*. at 23.  And so, Defendants request that the Court dismiss the amended complaint. *Id*. at 25.

Plaintiff counters that the Court should not dismiss this matter, because: (1) she has sufficiently pled the jurisdictional allegations set forth in the amended complaint; (2) the Defendants have purposefully availed themselves of Maryland law; (3) her claims relate to their contacts in Maryland; and (4) the exercise of personal jurisdiction in this case comports with the

6

Due Process Clause. ECF No. 28 at 4-13. In addition, Plaintiff argues that she states plausible MWESA and intrusion upon seclusion claims in the amended complaint and that she has standing to pursue the injunctive relief that she seeks in this matter. *Id*. at 14-16 and 22-24. And so, Plaintiff requests that the Court deny the Defendant's motion to dismiss. *Id*. at 25.

For the reasons that follow, Plaintiff has not shown that her claims in this matter arise out of the Defendants' activities in Maryland. Plaintiff also fails to allege facts to show that the Defendants purposefully availed themselves of the privilege of conducting activities in Maryland. And so, the Court **GRANTS-in-PART** the Defendants' motion to dismiss and **DISMISSES** the amended complaint for lack of personal jurisdiction. Fed. R. Civ. P.12(b)(2).

### A. The Exercise Of Specific Personal Jurisdiction Is Not Warranted

The Defendants' motion to dismiss this putative class action raises a threshold jurisdictional issue that many courts have recently grappled with—whether the operation of a national website that is accessible and used by the residents of a forum state is an activity that supports the exercise of specific personal jurisdiction over the website operator. It is well-established in the Fourth Circuit that, for this Court to have specific personal jurisdiction over the Defendants, Plaintiff must show that: (1) the Defendants purposefully availed themselves of the privilege of conducting activities in Maryland; (2) her claims arise out of those activities directed at Maryland; and (3) the exercise of personal jurisdiction would be constitutionally reasonable. *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016). The Fourth Circuit and the First Circuit have also specifically considered whether the elements for establishing specific personal jurisdiction are met when the defendant operates a national website that is accessible in the forum state. *See Fidrych*, 952 F.3d 124, 139 (4th Cir. 2020) (holding that operation of a national hotel website that is accessible in South Carolina did not amount to an activity that could establish specific personal jurisdiction); *Rosenthal v. Bloomingdales.com, LLC*, 101 F.4th 90 (1st Cir. 2024) (holding that Bloomingdale's commissioning of Session Replay Code to deploy on the Bloomingdales.com website was not a sufficient linkage with the State of Massachusetts to support the exercise of specific personal jurisdiction). And so, the Court is guided by these principles and case law in determining whether Plaintiff has established that the exercise of specific personal jurisdiction over Defendants is appropriate here.

7

For the reasons discussed below, Defendants persuasively argue that Plaintiff has not made a *prima facie* showing of personal jurisdiction to survive their jurisdictional challenge.

### 1. Plaintiff's Claims Do Not Arise Out Of Maryland

As an initial matter, a plain reading of the amended complaint shows that Plaintiff's claims in this matter do not arise out of, or relate to, the Defendants' activities in Maryland. To support the exercise of specific personal jurisdiction over Defendants in this case, Plaintiff must show that: (1) the Defendants "purposefully availed [themselves] of the privilege of conducting activities in the State"; (2) her "claims arise out of those activities directed at the State"; and (3) that "the exercise of personal jurisdiction would be constitutionally reasonable." *Perdue Foods*, 814 F.3d at 189 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2020)). The second element of this test—that Plaintiff's claims arise out of the Defendants' activities directed at Maryland—requires specific allegations in the amended complaint to show a connection between Maryland and the claims asserted in this case. *Bristol Myers-Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 264 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2857 n.6 (2011)) ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."). Plaintiff fails to make such allegations in this case.

In the amended complaint, Plaintiff alleges that she visited the Bloomingdales.com website on her computer on several occasions while she was physically located in Maryland and that her website communications were "instantaneously" captured by Session Replay Code and sent to various Session Replay providers. ECF No. 17 at ¶¶ 1, 61 and 64. Plaintiff also alleges that she was not made aware of, and did not provide meaningful consent to, the capturing of her website communications or the presence of Session Replay providers. *Id*. at ¶¶ 63, 73 and 77. And so, Plaintiff maintains in this putative class action that her alleged injury in this case involves the loss of control over her personal information resulting from her use of the Bloomingdales.com website. *Id.* at ¶ 104.

Given these factual allegations, the amended complaint makes clear that Plaintiff's claims do not arise out of activities directed at Maryland. As Defendants explain in their motion to dismiss, the Bloomingdales.com website is a national website that is accessible to users across the Nation. ECF No 27-1 at 1. Given this, the residents of any state can access and use this website.

8

The Court also observes that the features on the Bloomingdales.com website are available to users regardless of their physical location. ECF No. 17 at ¶¶ 17-19, 54-56, 89 and 113. And so, the Bloomingdales.com website does not target the residents of Maryland any more than it targets the residents of other states. *See Fidrych*, 952 F.3d at 141 (holding that operation of an interactive website did not establish personal jurisdiction because it "does not target [forum] residents . . . any more than it targets any other state"); *see also Curd v. Papa John's Int'l Inc.*, 692 F. Supp. 3d 525 (D. Md. 2023) (dismissing similar claims because website was not directly targeted at Maryland).[4]

Plaintiff's argument that her alleged injuries in this case are related to the Defendants' contacts in Maryland, because Bloomingdale's operates a brick-and-mortar store in Chevy Chase, Maryland, is also not persuasive. ECF No. 28 at 7-8, 12-13. Plaintiff acknowledges in the amended complaint that her alleged injuries occurred immediately upon accessing the Bloomingdales.com website. ECF No. 17 at ¶¶ 61-65. And so, it was Plaintiff's access to this website, rather than her physical location in Maryland, that gave rise to the alleged injuries in this case. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014); *see also Curd*, 692 F. Supp. 3d at 532 ("[i]f . . . operation of a website with general nationwide accessibility is sufficient . . . for a court to exercise personal jurisdiction, it would naturally follow that every state could exercise jurisdiction . . . [which] is inconsistent with the law . . . [.]").

In short, Plaintiff has not shown that her claims in this putative class action arise out of the Defendants' Maryland activities. For this reason, the Court must DISMISS the amended complaint for lack of specific personal jurisdiction. Fed. R. Civ. P. 12(b)(2).

### 2. The Defendants Have Not Purposefully Directed Their Activities To Maryland

Even if Plaintiff could show that her claims arise out of the Defendants' activities in Maryland, she also fails to establish personal jurisdiction because the amended complaint lacks

---

[4] Plaintiff correctly observes that the desktop and mobile versions of the Bloomingdales.com website allow users to search for nearby stores and to book appointments with sales representatives at the Bloomingdale's brick-and-mortar store located in Chevy Chase, Maryland. ECF No. 17 at ¶ 19. But these features do not show that Plaintiff's claims in this case arise out of Maryland, because the marketing and physical sale of Bloomingdale's goods have nothing to do with the claims in this case. *See Daghaly v. Bloomingdales.com, LLC*, 696 F. Supp. 3d 996, 1000 (S.D. Cal. 2023) ("physical sale of merchandise . . . does not underlie, or even relate to, Plaintiff's claim of digital eavesdropping").

facts to show that the Defendants purposefully directed their activities to the State of Maryland. As discussed above, Plaintiff must show, among other things, that Defendants "purposefully availed [themselves] of the privilege of conducting activities" in Maryland to support the exercise of specific personal jurisdiction in this case. *Perdue Foods*, 814 F.3d at 189. Plaintiff has not satisfied this requirement for several reasons.

First, as discussed above, the factual allegations in the amended complaint make clear that the Bloomingdales.com website is a national website that does not have any specific connection to Maryland. *See generally* ECF No. 17; *see also Fidrych*, 952 F.3d at 141 ("the mere fact that the website is accessible in a given state does not mean that [Defendant] is targeting its activities at that state."). Plaintiff also does not plead any facts in the amended complaint to show that the Defendants purposefully directed or targeted Maryland residents *via* the Bloomingdales.com website. *See generally* ECF No. 17. While Plaintiff does allege that the Defendants directed their "purposeful and tortious acts" toward the citizens of Maryland and that the Defendants' "deliberate gathering of data is intentionally targeted towards citizens of Maryland," such conclusory allegations, without more, are not sufficient to establish personal jurisdiction. ECF No. 17 at ¶¶ 15 and 20.

Plaintiff's argument that the Court may exercise personal jurisdiction over the Defendants, because the Bloomingdales.com website and the operation of the Bloomingdale's brick-and-mortar store located in Chevy Chase, Maryland constitute an integrated single business enterprise, is equally unavailing. ECF No. 17 at ¶¶ 19 and 55. Again, Plaintiff's claims in this case do not arise from any acts that occurred at the Bloomingdale's store located in Chevy Chase, Maryland. ECF No. 17. More importantly, the connection that Plaintiff argues exists between the Bloomingdales.com website and the Bloomingdale's Chevy Chase, Maryland store also exists for all Bloomingdale's stores nationwide.

Lastly, the Court is also unpersuaded by Plaintiff's argument that the level of interactivity of the Bloomingdales.com website supports the exercise of specific personal jurisdiction in this case. Relying upon *ALS Scan, Inc. v. Digital Serv. Consultants, Inc*., Plaintiff argues that the Court should exercise personal jurisdiction over Defendants, because the Bloomingdales.com website is "highly interactive." ECF No. 28 at 17; *see also ALS Scan, Inc. v. Digital Serv. Consultants, Inc*., 293 F.3d 707 (4th Cir. 2002) (suggesting that jurisdiction can be shown "when it can be deemed that an out-of-state citizen, through electronic contacts, has conceptually

10

'entered' the State *via* the Internet for jurisdictional purposes."). But the Fourth Circuit recognized in *ALS Scan, Inc.* that:

> . . . a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received. Such passive Internet activity does not generally include directing electronic activity into the State with the manifested intent of engaging business or other interactions in the State thus creating in a person within the State a potential cause of action cognizable in courts located in the State.

*ALS Scan, Inc.*, 293 F.3d at 714; (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). And so, the Fourth Circuit has more recently found that a hotel website that is very similar to the Bloomingdales.com website at issue here was not sufficiently interactive to establish personal jurisdiction. *Fidrych*, 952 F.3d at 142.

Similar to the hotel website at issue in *Fidrych*, the Bloomingdales.com website facilitates "one-off" transactions to purchase merchandise, rather than soliciting a "continuing, back-and-forth relationship" with the website user. *Id.*; ECF No. 17 at ¶ 19. Also similar to the hotel website that the Fourth Circuit considered in *Fidrych,* the Bloomingdales.com website allow users to book appointments and arrange for in-store pickup at Bloomingdale's brick-and-mortar stores. 952 F.3d at 142; ECF No. 17 at ¶ 19. And so, the Court declines to exercise personal jurisdiction over Defendants here, for the same reasons that the Fourth Circuit found the website at issue in *Fidrych* to be insufficient to establish personal jurisdiction.

### 3. Plaintiff Fails To Establish Jurisdiction Under The Effects Test

As a final matter, Plaintiff also fails to establish personal jurisdiction over Defendants under the so-called "Effects Test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984). Plaintiff may also establish that the exercise of specific personal jurisdiction is appropriate by showing that: (1) the Defendants committed an intentional tort; (2) she felt the brunt of the harm in Maryland, such that the forum can be said to be the focal point of the harm; and (3) the Defendants expressly aimed his tortious conduct at Maryland, such that the forum can be said to be the focal point of the tortious activity. *Carefirst of Maryland v. Carefirst Pregnancy Cntrs.*, 334 F.3d 390, 398 n.7 (4th Cir. 2003); *see also Calder*, 465 U.S. at 789; *Consulting Eng'rs Corp. v. Geometric Ltd.*,

11

561 F.3d 273, 280 (4th Cir. 2009).[5]  But, again, Plaintiff does not allege facts in the amended complaint to show that the Defendants expressly aimed their alleged tortious conduct at Maryland residents.  *See generally* ECF No. 17.  Rather, the amended complaint makes clear that the Bloomingdales.com website is accessible nationwide and, thus, not specifically targeted at Maryland residents.  ECF No 27-1 at 1.  Because Plaintiff has not met her burden to show that the exercise of specific personal jurisdiction over the Defendants is appropriate in this matter, the Court DISMISSES the amended complaint for lack of personal jurisdiction.[6]

## V.  CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS-in-PART** the Defendants' motion to dismiss; and

(2) **DISMISSES** the amended complaint for lack of personal jurisdiction.

A separate order shall issue.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge

---

[5] The Fourth Circuit has held that the "Effects Test" does not supplant the Court's minimum, contacts analysis, but informs that analysis.  *Consulting Eng'rs Corp. v. Geometric Ltd*, 561 F.3d 273, 280 (4th Cir. 2009).

[6] Because the Court concludes that Plaintiff has not established a *prima facie* case to support the exercise of specific personal jurisdiction, the Court does not address the other arguments raised in the Defendants' motion to dismiss.